Case No. 25-5076, Evelyn Kayode appellant v. Pamela Bondi, United States Attorney General. Ms. Renaud for the appellant, Mr. Verhane for the appellate. Good morning, counsel. Ms. Renaud, please proceed when you're ready. I think this is the right height. Good morning. May it please the court. We're here today because Evelyn Kayode was a productive and good-performing criminal investigator in the Fraud Detection Office. She did a good job. The statistics in the records show that she was highly productive, even though her supervisor said something different. The actual statistics show that she was more productive than most of her colleagues. The reason we're here is because she developed anxiety due to retaliation and discriminatory harassment by her supervisors. And when she requested an accommodation to be relieved of some of the harassment, her request for accommodation was met with sort of bogus and silly responses like, you'll spend more time with your supervisors who are harassing you, and you can have one day of telework when there was already a policy in the office that everyone had two days of telework. So it was a little bit disingenuous there, but it also was a denial of any type of relief. And in their briefs, they say that they denied the accommodation because it was unreasonable. But there were four criminal investigators with the exact same job title as Ms. Kayode who worked outside of the D.C. area, across the country, and didn't work in person with their supervisor. So obviously it can be done. We also know that it could be done because she was temporarily accommodated for several weeks and performed her duties well. Now, they also point to a failure to engage in the interactive process. And the court should be reminded of the case of Allie—oh, no, I forgot it. The interactive process, Allie v. Regan, the interactive process is a procedural means to a substantive end. If you don't meet the interactive process, not engaging in it is not dispositive. Here, the reasons they give for denying the accommodation have nothing to do with having sufficient medical information. They had sufficient medical information to know that she had anxiety caused by people in the workplace, and her request was to be relieved of that. When you say it had nothing to do with medical information, there was a request for more medical information. There's always a request for more medical information. I mean, that's what federal employers do. They just keep asking for more medical information, but here they had medical information. They sent her— There's always medical information, too. Right. You can do that. And there is medical information. I mean, there was a report from— It can't be that any medical information is enough. I mean, sure, there was some medical information. Yes, there was some medical information. And they didn't specify what they needed more for or what they needed more of. There was medical information from two of her providers, and the agency sent her for essentially an IME. She sat for eight hours with a psychologist who said that she had anxiety, situational anxiety, adjustment disorder with anxiety. Adjustment disorder means it's situational. It's not something that she's had all her life. It has to do with the work environment. And the psychologist specifically says that. But the reason they give for denying the accommodation is not we have insufficient medical information. The reason they give is they say it's not feasible for somebody in this job to work remotely. Meanwhile, they have four criminal investigators throughout the country working in different offices, not in person with their supervisor. We also have that they granted her the accommodation temporarily. One of the things the government says is it wasn't just a request to work remotely. It was a request to work remotely and to transcribe all the meetings and to have 72-hour notice. And the letter actually says we're going to deny your combined accommodations because combined they cause a problem. So how do you deal with that? It wasn't just a request and a denial of telework. But they denied all of it. They said she couldn't do any of it. And she came back and said she pointed out that there are people who work remotely. And she didn't. Did she ask to be able to work remotely without the other accommodations? I mean, I think there's a reasonable, genuine issue that she did. Because in her memo when she comes back, she doesn't reiterate all the other things. Her number one is what she reiterates. And the number one is I want to work remotely. Actually, I think she says full-time telework, Monday to Friday. And the other four employees, they are technically remote because they live outside of the area. But it amounts to the same thing. It means no in-person contact. But she did not, I mean, you could say her follow-up request was just for the remote work. And that, if I can find it for you, is on August 1st. At Joint Appendix 494. In sort of arguing back with the Assistant Inspector General, she says why she wants remote work. And she also explains that some of her accusations about you not working on some report for two years is inaccurate. And she points out, again, that there are, she doesn't say the number because she doesn't know. But she says there are a number of 1811 criminal investigators who are not physically located in Arlington, Virginia. And they work outside and they manage to communicate virtually and interact with their supervisors as needed. So I think there it is, definitely raises an inference that she was willing to forego anything else and just get the remote work. She also asks elsewhere for a transfer to a different office so that she can be supervised by people who are not harassing her. And the appellee's argument there is that she didn't specifically put that in the form for reasonable accommodation request. She put it in her FMLA request and she put it in a memo. But under LOIA v. Sebelius, you're not required to use any magic words or any magic form. You just let it be known that you have these conditions and that this is a way that they can alleviate it. That is enough to officially request an accommodation. Another argument they make is that the one doctor's report says, yes, she had anxiety, but her symptoms are largely resolved. They're resolved because she's not in that work environment anymore. The doctor's report also says that her symptoms are likely to return if she returns to the same location and supervisor. And we all are familiar with the definition of reasonable accommodation, that you're entitled to a reasonable accommodation if it enables you to do your job. But there's another prong in the regulations, 29 CFR 1630.201, Roman numeral little three, that you're entitled to accommodations that enable you, a disabled employee, to enjoy the equal benefits and privileges of employment. So it's not just you can't do your job unless you have accommodations. But if you want to be equal to other people and not feel harassed, that's also an accommodation that's required. If I could just touch on the retaliation claim for just like two seconds. I just want to say that in total, there are seven circuits and the EEOC guidance that specifically say that you can aggregate. When you're talking about retaliation, you aggregate all the harassment or the adverse actions to decide whether or not it would deter a reasonable employee from making a complaint of discrimination. There's also the case of Mogenham in this circuit where they don't say it, but they do it. They look at two different acts of retaliation and say together they're sufficient to deter a reasonable employee. If you don't have any questions, I'd like to reserve the remainder.  Okay. Thank you, Counsel. Thank you. Give you a little time for rebuttal. Mr. Berhane. Good morning, Your Honor. May it please the Court. My name is Assistant U.S. Attorney Isaac Fitawi Berhane on behalf of the Attorney General. Before today's panel is an appeal brought by a former criminal investigator assigned to the Fraud Detection Office in the Department of Justice's Office of Inspector General. Although there are many separate claims in the amended complaint, the only issues that are before this panel are KOD's retaliation and accommodation claims. And as for the retaliation claim, the basis for KOD's appeal are essentially two arguments. Number one, that the district court decision granting the Attorney General a summary judgment was mistaken in as much as it failed to consider the 18 discreet acts of alleged retaliation in an aggregate form. And I believe KOD raises another argument regarding the purported lack of credibility of one of her supervisors, Amber Howell. But first of all, what I know is that KOD never made any argument about sort of an aggregate consideration of her discreet acts before the district court. And indeed, she actually says as much in pages 19 and 20 of her reply brief in which she says that raising this argument was essentially optional, that she wasn't required to do it. And indeed, a review of the record rule shows that she never made such an argument before the district court. But second, treating such claims, retaliation claims in an aggregate form, I think the case law shows that this is something that's only done in the context of a retaliatory hostile work environment claim. And such claims are discussed in the various out-of-circuit opinions that were cited by KOD in her opening brief. And this court has also discussed such claims in McCone versus Dillon, a case I believe that was decided back in 2020. But in the context of a retaliatory hostile work environment claim, a plaintiff would have to show that there are various acts that are sufficiently connected based on their kind. And perhaps the court mentions various criteria such as the kind of actions that are taken. Perhaps is it the same supervisor or different supervisor's factors such as that? And then the court should proceed to consider whether such claims are sufficiently severe to satisfy the criteria for retaliatory hostile work environment claim. And I'll just note that in none of the briefing that's been filed before this court, KOD does not touch on any of those issues. She's just saying in a very functory kind of conclusory manner that these 18 discrete acts constitute retaliation. But she never explains why. She doesn't deal with the criteria that's established in McConin. If you put aside forfeiture, why would it make sense to require a plaintiff who just wants to argue that multiple retaliatory things occurred to me? Why would they have to sort of plead an entirely separate claim rather than just argue? My employer did the following three things to me. If you don't think there are enough individually, there are enough in the aggregate. And as appellant's counsel pointed out, that is sort of what this court did in the Mogenhan case. It's just common sense. You were trying to meet the Burlington standard. You can do it with one act or you could do it with three or 18. Yes, Your Honor. But again, several of these, again, putting aside the issue of forfeiture as stated, these claims are actually of a very disparate nature. I mean, several of them actually proceed, at least one of them, the one that's indicated and asserted in paragraph 39D of the amended complaint regarding this issue that her supervisors were asking for access logs, that she actually says in her amended complaint that this began in June of 2018, which precedes any of the protected activity that she participated in, in this case, regarding her various accommodation requests. I believe there's three that's mentioned. If you look at other retaliation claims, they're not necessarily by the same supervisor. Many of them are vaguely pled, you know, regarding various allegations of unprofessional or rude behavior. And even the most severe, arguably severe retaliation claims having to do with her temporary reassignment to the investigative support branch in January 2019, as well as the request that she submit to a psychiatric examination. Those actions were actually taken pursuant to Coyote's own request. She said in an email on — I mean, those are answers to individual ones about why they might not be well stated or borne out as a factual matter. But just as a conceptual matter, it's not entirely clear to me, as Judge Garcia was indicating, why you wouldn't have a death by a thousand cuts. Because you can imagine an employer who — what we're trying to get at with retaliation is, is what's being done enough that it would dissuade a person from complaining? And they might be dissuaded from complaining because of one significant actor, and they might be dissuaded from complaining because there's 30 that add up to something that's really troubling. It's not clear to me why you wouldn't just at least allow for accumulation of them because the composite might be enough to dissuade a person from raising a complaint, which is what we're trying to get at to begin with. Understood, Your Honor. And I think the argument that I was going to get to — I believe I cited one case in the government's brief indicating that, in the context of these composite consideration of retaliation claims, that ultimately zero plus zero equals zero. And I think the government's position is that even if you considered these claims for the purposes of this case in an aggregate form, you're still not going to come out with a retaliation — with a viable retaliation claim. And, you know, for several of these discrete acts, we've asserted legitimate reasons that Coyote has failed to even address in this appeal and several other actions. So you're not disputing that in an appropriate case, you could aggregate and find in the aggregate this crosses the line? I think the position — what I'm trying to say is that even if we were to use that standard, I just don't believe that Coyote — that doesn't help Coyote's retaliation claim survive a summary judgment, an adverse summary judgment ruling. But, Your Honors, I think I'm running out of time. I'd like to jump to the accommodation claim. On the accommodation claim, unless there's something further on retaliation. On the accommodation claim, the points that were made this morning and in the briefing, that there were other people in the same position for whom they didn't have to report to the office where the supervisor was. It's true that they weren't working from home. They were people who were working at an office. So there's an arguable difference between, you know, remote working from home or working from a satellite location. But if it's true that other people in the same position were working away from their direct supervisor, then what's the problem with the accommodation — that part of the accommodation that was requested? Well, Your Honor, it's true that Coyote has mentioned — I believe there's four individuals that allegedly had some kind of an arrangement that they don't have to — that they didn't have to work at an FDO facility. But there's no evidence in the record, and Coyote, by the way, never took discovery during this district court proceedings. So there's no evidence in the record that these individuals had the same performance or behavioral issues that Coyote did. So to the extent that she's trying to say that these are comparators in some sense, I don't think the record supports that. As far as I know, and as far as is reflected in the record, these four individuals were required to work at Department of Justice facilities. They were not given some kind of indefinite telework accommodation, such as what Coyote was requesting. So we just don't — and I believe this is explained in one of the response memorandums to her accommodation request. So we don't regard these four individuals' circumstances as relevant. What did you say you believe that it was — what was explained in one of the — In one of the — I'm looking at — I believe it's — I don't know. I believe it's in page 497 of the joint appendix. Yeah, that's a memo from Lake. Yeah, that's right. And she — Lake, this memo — I'm just trying to jump to it. Yeah, it touches on this issue at the bottom of 497 and the top of 498, ultimately explaining why the circumstances of these four individuals are not — And I should note, as well, the record doesn't reflect that Coyote ever attempted to rebut what Lake mentioned in this memorandum. Make sure my colleagues don't have additional questions. Okay, thank you, Kapsa. So now we'll give you two minutes for rebuttal. Regarding the retaliation, there's no forfeiture. It's not a new claim. We didn't not argue that you have to aggregate. We just aggregated. We listed out all the different ways that her employer retaliated against her in our opposition to summary judgment and then made the argument that that amounted to enough to deter a reasonable employee. So I don't see how an argument could be forfeited when we had no idea that the district court was going to disaggregate. We put it all together. We didn't say you need to aggregate because, of course, the Supreme Court itself in Burlington said that context matters and it depends on a constellation of surrounding circumstances. And there are specifics that we highlight in our appellant's opening brief of exactly what was done to her, specifically instructing coworkers not to communicate with her, falsely accusing her of not doing her work, not required hours, removing her from email lists and shared websites, which made it harder to do her job. They restricted her access, ironically, to the FDO office space that they said she needed to work in. And her supervisor, we allege, raised her voice at her and yelled at her, I'm the supervisor and you are the employee. And that happened just two weeks after her request for accommodation. So we think that we have listed out enough that a reasonable person could see this might deter a person from complaining or requesting accommodation. In terms of the, I just wanted to say with regard to the accommodation claim, there was no need to rebut that the criminal investigators, there was nothing to rebut the criminal investigators that work remotely. Yes, they report to different offices. She was willing to report to a different office, but their reason for not giving her remote work was not that she needed to report to an office and not work out of a home office. Their reason was you need to interact with your supervisors. And she pointed out that the people who work remotely all over the country are able to interact with their supervisors. So nothing further. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Henderson; Garcia